IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ONE BEACON AMERICAN INSURANCE
COMPANY,

        Plaintiff,                                    04cv1934

        v.                                        **Electronically Filed**

BARTLEY MARINE, INC., a Corporation,
and ERIC KOLODZIEJ, an Individual,

        Defendants.

**MEMORANDUM OPINION**

**December 22, 2005**

    **I.**      **Introduction.**

    Before the Court in this declaratory judgment action, brought pursuant to 28 U.S.C. §

2201, are cross motions for summary judgment filed on behalf of plaintiff, One Beacon

American Insurance Company, and defendant Bartley Marine, Inc., the insured.  Defendant Eric

Kolodziej joins the motion for summary judgment of his employer, Bartley Marine, for which he

was employed on September 20, 2004.   Mr. Kolodziej was working as a deckhand on the M/V

Kathleen Nicole, which Bartley Marine had chartered earlier that day, in an effort to protect

Bartley Marine's fleet (vessels and barges) from damage from flooding, flotsam and jetsam

caused by Hurricane Ivan, which dumped record breaking rainfall in the Upper Ohio River

watershed on September 17, 2004.

    One of Bartley Marine's barges, Barge 8160, a jumbo barge, was beached when the

floodwaters of the Ohio River began to recede; one of Bartley Marine's vessels, the M/V Envoy,

was disabled by flotsam which struck its propeller.  Eugene Bartley Jr., the President of Bartley

Marine, piloted, and Eric Kolodziej was a crew member on, the M/V Kathleen Nicole attempting

to free Barge 8160 via a controlled slide, when Mr. Kolodziej was caught between the barge and

the vessel, sustaining serious injuries. One Beacon has made payments for medical treatment

incurred by Mr. Kolodziej for which it seeks reimbursement under reservation of rights, but has

denied Bartley Marine's prompt claim for coverage of its employee's injuries occurring during

his work on the M/V Kathleen Nicole. One Beacon asserts that this chartered vessel was not

covered by the Hull and Machinery and Protection & Indemnity (P&I) policies which it had

issued to Bartley Marine because it was not one of four vessels listed in the Schedule of

Insurance attached to the Policy.

After careful consideration of the cross motions for summary judgment, the responses

thereto, the supporting briefs and the materials submitted in support of summary judgment, the

Court finds that the P&I policy covers injuries to crew members working the M/V Kathleen

Nicole on September 20, 2004, and, therefore, will grant Bartley Marine's motion for summary

judgment and deny One Beacon's motion for summary judgment.

## II.     Summary Judgment Standards.

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of

Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d

Cir.2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the

evidence ... through the prism of the substantive evidentiary burden" to determine "whether a

jury could reasonably find either that the plaintiff proved his case by the quality and quantity of

the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson*

3

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.)  *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

### III.    Material Facts.

There are no genuine issues of material fact, only issues about the appropriate inferences and legal consequences of the undisputed material facts, and unless noted, the following facts are not disputed.

**Background**

Bartley Marine is a family operated Pennsylvania corporation founded in 1995 by Eugene Bartley, Jr., with its principal place of business at a river landing in West Virginia on the Ohio River in the navigation pool created by the Pike Island Dam at Mile Marker 84.  Bartley Marine owns and charters towboats and is engaged in "towing, fleeting, cleaning, and shifting of barges owned by others, as well as tug service" at the Mile 84 landing and other landings on the Ohio River.  Bartley Marine has always owned several vessels, and from time to time charters other towboats for use in its business operations, taking complete custody and control over such chartered vessels.  Routinely, other towing companies deliver an average of five to ten barges a day to Bartley Marine landings for cleaning; as is customary in the business, Bartley Marine employees regularly assist those other towing companies in dropping off and picking up barges, performing deckhand jobs such as tying and untying lines and moving equipment, which routinely involves Bartley Marine employees going onto towboats owned by other companies. Bartley Marine's Statement of Material Facts, at ¶¶ 8-10.

4

One Beacon does not contest Bartley Marine's description of its operations or the customary practices in the industry as set forth in Bartley Marine's statement of material facts, but adds that on every occasion when Bartley Marine has chartered a towboat, except for the M/V Kathleen Nicole charter, Bartley Marine has "contacted One Beacon to obtain insurance coverage," and that if any Bartley Marine employee would be injured "while assisting another towboat operator," that operator would be liable for coverage of treatment for such injuries. One Beacon's Response to Bartley Marine's Statement of Material Facts, ¶¶ 8-10.

### Policy CPJ H10198 ("the Policy")

The starting point of this or any insurance coverage dispute is, of course, the insurance policy.  From May 12, 2000, through four renewals until May 12, 2005, Bartley Marine's fleet and crew were insured by One Beacon under the Policy designated as CPJ H10198.  The Policy initially provided Hull and Machinery insurance for several named vessels, and separate P&I insurance for Bartley Marine's "Floating Crew" members.  Pursuant to the May 12, 2004 Policy in effect on September 20, 2004, Bartley Marine paid a $18,630 premium for Hull and Machinery insurance on four named vessels, the M/V Steel City, M/V Envoy, M/V Jessie James, and M/V Gateway Express, and a $33,120 premium for "Six (6) Floating Crew" P&I insurance. The Policy does not define a "Floating Crew" nor does it provide that P&I coverage applies only if a Bartley Marine crew member is injured while working on a listed vessel, although it does provide that no more than six crew members may be employed on an insured vessel at any one time. Complaint, Exhibit A, at 14.

**Course of Dealing or Performance**

Purchasing, selling and chartering marine vessels is customary in the river towing industry and at Bartley Marine.  Bartley Marine Statement of Material Facts, ¶ 54. One Beacon does not admit this custom, but does not dispute it either. One Beacon Response to Bartley Marine Statement of Material Facts, ¶ 54.  Over the life of the Policy, the parties made 12 adjustments or modifications "to conform with changes with the composition of the Bartley Marine fleet, with each modification effective on the date requested by Bartley Marine."  Bartley Marine Statement of Material Facts at ¶ 53, and Exhibit 4.  One Beacon does not dispute these modifications were made, but adds that "on virtually every occasion when Bartley Marine changed its policy to add or delete a vessel, it contacted One Beacon on the date such change was to be effective." One Beacon Response to Bartley Marine Statement of Material Facts at ¶ 53.

Bartley Marine's Exhibit 4, which is not disputed, shows the 12 adjustments to coverage included increasing the floating crew coverage from three to six members, adding and deleting vessels, changing the insured status of vessels, and adding chartered vessels.  Therefore, Bartley Marine's claim that One Beacon always accommodated its requests, retroactive to the effective date requested, is supported by the submitted evidence.  However, for all but two of the requested adjustments, Bartley Marine's request was for an adjustment effective the same or the previous day.  *Id*.  On December 23, 2003, Bartley Marine requested deletion of the M/V Bobby Gene Johnson from coverage effective December 14, 2003, which request One Beacon honored on January 20, 2004; on March 3, 2004, Bartley Marine requested a change of status from "Port Risk only" to "full service" for the M/V Jesse James effective February 23, 2004, which request One Beacon honored on March 10, 2004.

6

**Events of September 20, 2004**

The events flowing from Hurricane Ivan's passage through this region on September 17, 2004 are not in dispute. Extreme flooding in the Upper Ohio River watershed eventually caused Barge 8160 to be stranded on a bank of the Ohio River. When the river receded, this barge became unstable as it strained the tie cables and threatened other barges and vessels owned by Bartley Marine.

Mr. Bartley and the Bartley Marine crew worked nearly around the clock from September 17th through September 20th to protect the fleet. Mr. Bartley, a river man with forty some years of experience, decided on a course of action that included pulling Barge 8160 off the bank with a controlled slide and securing it, and moving other barges back upstream. To do so, Mr. Bartley decided he needed another towboat with much greater horsepower than the available Bartley Marine vessels, so he chartered an 1800 horsepower towboat from the Johnson Towing Company, the M/V Kathleen Nicole. Johnson Towing needed all of its crew members, and so would not supply a crew for the M/V Kathleen Nicole. Therefore, Bartley Marine agreed to and did take full control and custody of the M/V Kathleen Nicole.[1] Bartley Marine supplied the pilot and deck crew for the M/V Kathleen Nicole, although an engineer for Johnson Towing stayed with the vessel.

Later on September 20, 2004, the M/V Envoy was crippled when a tree rammed its

---

[1] One Beacon denies Bartley Marine's statement that the "control and custody" terms of the charter were pursuant to an agreement with Johnson Towing because One Beacon was not privy to that agreement and cannot know its terms. One Beacon Response to Bartley Marine Statement of Material Facts ¶ 40. However, One Beacon does not dispute that Bartley Marine was actually in control and had custody of the M/V Kathleen Nicole and supplied the pilot and crew. One Beacon Response to Bartley Marine Statement of Material Facts ¶ 41.

propeller which in turn was driven against and damaged the rudder.  The M/V Kathleen Nicole was moved into position to free Barge 8160 with the controlled slide, when Mr. Kolodziej became pinched between the barge and the vessel at approximately 4:30 p.m.  Promptly thereafter,[2] Bartley Marine notified One Beacon of the accident and its intention to pursue a claim through its Policy with One Beacon.  There is no question that Bartley Marine did not request coverage for the M/V Kathleen Nicole prior to the accident.

**Coverage Issues**.

As noted, the material facts are mostly undisputed, except as to the intent of the contracting parties.  Bartley Marine states that it was always its and Mr. Bartley's "understanding and expectation" that when there were changes to be made to coverage for the vessels in its fleet, "its policy with One Beacon would be adjusted accordingly so that the fleet was always insured. It was also Bartley Marine's and Mr. Bartley's understanding and expectation that Bartley Marine would not have to apply for a new policy of insurance every time it purchased or chartered a vehicle."  Bartley Marine Statement of Material Facts ¶ 54.  Furthermore, Bartley Marine understood that the Policy covered injuries to its seamen "regardless if they were injured in the service of one of Bartley Marine's insured towboats or in the service of a towboat or barge owned by someone else."  Bartley Marine Statement of Material Facts ¶ 55.

One Beacon admits that, in fact, Policy changes always were made when requested by Bartley Marine, but denies that it or Mr. Bartley could reasonably have expected coverage of the M/V Kathleen Nicole contrary to the "express terms" of the Policy listing covered vessels. One

---

[2] The exact date is not clear from the record, but it had to be sometime between September 20th and October 14th, 2004, because One Beacon denied Bartley Marine's request for coverage by letter of October 15, 2004. One Beacon Motion for Summary Judgment, Exhibit A.

Beacon Response to Bartley Marine Statement of Material Facts ¶ 55.  It is One Beacon's

position and understanding that it would make adjustments to the Policy *when requested* by

Bartley Marine, but that Bartley Marine did *not make such a request* in this case until after the

accident. One Beacon Response to Bartley Marine Statement of Material Facts ¶¶54-64. One

Beacon implies that it might have rejected a request for a change to fleet coverage because it

reserved the "right to decline to insure a vessel or vessels that do not meet its underwriting

standards." One Beacon Response to Bartley Marine Statement of Material Facts ¶ 60. However,

One Beacon does not claim that the M/V Kathleen Nicole in fact failed to meet its underwriting

standards nor does it claim there was any other reason it might have denied coverage when

requested other than, in this instance, there was an accident and claim made before the paperwork

was processed.

### III.  The Law.

The parties agree that Pennsylvania law governs the interpretation of the Policy providing

P&I insurance for Bartley Marine crew members in this case.  The Supreme Court  of

Pennsylvania recently summarized the law of insurance contract interpretation in *401 Fourth*

*Street, Inc. v. Investors Ins. Group*, 583 Pa. 445, 879 A.2d 166 (2005), where it stated as follows:

> [W]e begin our analysis by setting forth the well-established
> rules of insurance contract interpretation. "The task of interpreting [an
> insurance] contract is generally performed by a court rather than by a
> jury." *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557
> Pa. 595, 735 A.2d 100, 106 (1999) (citations omitted); *Standard*
> *Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469
> A.2d 563, 566 (1983). The purpose of that task is to ascertain the
> intent of the parties as manifested by the terms used in the written
> insurance policy. *Gene & Harvey Builders, Inc. v. Pennsylvania*
> *Manufacturers' Association Ins. Co.*, 512 Pa. 420, 517 A.2d 910, 913
> (1986) (*quoting Standard Venetian Blind Co.* (citations omitted)).

When the language of the policy is clear and unambiguous, a court is required to give effect to that language. *Id.* When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. *See id.*  "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.' " *Madison Construction Co.*, 735 A.2d at 106 (*quoting Hutchison v. Sunbeam Coal Co.*, 513 Pa. 192, 519 A.2d 385, 390 (1986)). Finally, "[i]n determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract, do not assume that its language was chosen carelessly." *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 662 (1982) (*quoting Moore v. Stevens Coal Co.*, 315 Pa. 564, 173 A. 661, 662 (1934)). Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

879 A.2d at 171.  *See also J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363-65 (3d Cir. 2004) (summarizing Pennsylvania law on the interpretation of insurance contracts).

The rule that any ambiguity must be resolved in favor of coverage for the insured recognizes that insurance policies are contracts of adhesion between parties of usually unequal bargaining power, especially regarding the language of such contracts that has been drafted by the insurance industry, *McMillan v. State Mut. Life Assur. Co. of America*, 922 F.2d 1073, 1075 (3d Cir. 1990), and that "transactions between insurers and insureds are fundamentally different from those between parties to contracts as envisioned by the common law."  *Bensalem Tp. v. Int'l. Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309-10 (3d Cir. 1994).

The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Lower Frederick Tp. v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988).  In *Bensalem Tp. v. Int'l. Surplus Lines Ins. Co.*, 38 F.3d at 1309, the United States Court of Appeals for the Third Circuit instructed courts applying Pennsylvania law to "examine the totality of the

10

insurance transaction involved to ascertain the reasonable expectation of the insured." The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *State Highway & Bridge Auth. v. E.J. Albrecht Co.*, 59 Pa.Cmwlth. 246, 430 A.2d 328 (1981).

A determination of whether a contract is ambiguous also is a question of law for the court. *Hutchison*, *supra*. Where ambiguity exists in the contract, parol evidence is admissible to explain, clarify or resolve the ambiguity, whether the ambiguity is created by the language of the agreement or by extrinsic or collateral circumstances. *In re Estate of Herr*, 400 Pa. 90, 161 A.2d 32 (1960); *TIGG Corp. v. Dow Corning Corp.*, 822 F.2d 358 (3d Cir. 1987) (language that admits of more than one interpretation is not a prerequisite to admission of extrinsic evidence relating to usage of trade, course of dealing, or course of performance).

Even when a contract seems unambiguous, the course of performance of the parties is always relevant in construing a contract. *Prudential Ins. Co. of America v. Prusky*, 2005 WL 1715659, *4 (E.D.Pa. 2005), *quoting Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001) ("to decide whether a contract is ambiguous, we . . . consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning.").

A court, therefore, may look to the parties' course of conduct to determine whether a

11

contract is ambiguous, *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736, 741 n. 6 (1978),  or to resolve an ambiguity.  *Resolution Trust Corp. v. Urban Redevelopment Auth.*, 536 Pa. 219, 638 A.2d 972, 975 (Pa. 1994).  Indeed, course of conduct or performance may be the strongest indication of the intention of parties to a contract.  *Razumic*, 390 A.2d at 741.  *See also Sunbeam Corp. v. Liberty Mutual Ins. Co.*, 566 Pa. 494, 781 A.2d 1189 (2001) ("manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade"), (*quoting* Restatement (Second) of Contracts § 202(5)).

    **IV.**    **Application**.

    Viewed in light of the foregoing principles of insurance contract interpretation, the Court has little hesitation finding that the Policy in question supplied P&I coverage for all crew members working for Bartley Marine on the M/V Kathleen Nicole on September 20, 2004, including Eric Kolodziej.

    The parties' conduct throughout the course of the Policy, i.e., from May 12, 2000 through May 12, 2005, demonstrates that the scope of Bartley Marine's P&I coverage was not limited to injuries to crewmen working only the vessels specified in the Schedule of Insurance attached to the Policy, but rather, was subject to change from time to time at Bartley Marine's request.  Such adjustment requests were never turned down by One Beacon during its course of dealings with Bartley Marine, nor did One Beacon ever advise Bartley Marine that it had to seek prior approval of changes of status, or even for adding or deleting vessels to the Policy, before such changes could become effective.  On at least two occasions, One Beacon made substantial adjustments to coverage after requests by Bartley Marine to make the changes retroactive to an effective date a

week or more earlier than the requests were made, with no suggestion by One Beacon that this procedure was not proper or that One Beacon might not always accommodate such a request.

It is customary in the towboat and barge industry for owners to charter towboats and take complete control and custody of the chartered vessels, and One Beacon was aware of this custom and provided coverage of such vessels when requested by Bartley Marine. One Beacon also was aware of the nature of Bartley Marine's operations, which required its crew members to move between its own vessels and those of third parties, and to work Bartley Marine owned vessels and also chartered vessels as deckhands for Bartley Marine. There is nothing in the Policy, or in the course of conduct or performance by the parties over the life of the Policy, that would suggest that the prior approval by One Beacon was necessary to obtain coverage for chartered vessels.

Moreover, the Floating Crew P&I insurance for six crew members was paid by a separate premium than the Hull and Machinery insurance, at almost double the premium rate.  Nothing in the language of the Policy indicates that "Floating Crew" insurance is limited to floating crew members working on only those vessels listed in the Schedule of Insurance, especially where One Beacon was aware that Bartley Marine previously had requested and obtained coverage for chartered vessels.

**V.      Conclusion.**

For all of the foregoing reasons, the Court finds that One Beacon's Policy regarding coverage of the M/V Kathleen Nicole is ambiguous, and that the parties' course of conduct and industry customs during the life of the Policy resolves the ambiguity in favor of P&I insurance coverage for Eric Kolodziej while working on the M/V Kathleen Nicole on September 20, 2004. One Beacon must therefore defend Bartley Marine on any claims made against it by Mr. Kolodziej and will indemnify Bartley Marine for its liability to Mr. Kolodziej.

An appropriate order will be entered.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:      All counsel of record as listed below

David M. McQuiston, Esquire
William James Rogers, Esquire
Thomson, Rhodes & Cowie
1010 Two Chatham Center
Pittsburgh, PA 15219

Stephen P. Moschetta, Esquire
The Moschetta Law Firm
28 West Cherry Avenue
Washington, PA 15301


Dennis Watson, Esquire
Mike Finney, Esquire
Grogan Graffam
Four Gateway Center
12th Floor
Pittsburgh, PA 15222

14